**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 2, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1018**

STATE OF WISCONSIN

Cir. Ct. No. 2002CI2

IN COURT OF APPEALS
DISTRICT I

IN RE THE COMMITMENT OF MAURICE HARDY:

STATE OF WISCONSIN,

        PETITIONER-RESPONDENT,

  V.

MAURICE HARDY,

        RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Reversed and cause remanded with directions*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Maurice Hardy appeals an order of the circuit court extending an involuntary medication order to treat Hardy's schizophrenia.  We conclude that the State did not prove by clear and convincing evidence that Hardy was not competent to refuse medication, nor did the State prove that the medication order was necessary to prevent serious physical harm to Hardy or others.  *See* WIS. STAT. § 51.61(1)(g)3. (2021-22).[1]  Accordingly, we reverse the circuit court's order and remand this matter with directions to deny the State's motion for involuntary medication.

## BACKGROUND

¶2      In 2003, the Milwaukee County Circuit Court committed Hardy to the Department of Health Services (DHS), after determining that he was a sexually violent person pursuant to WIS. STAT. ch. 980.  Hardy has been at the Sand Ridge Secure Treatment Center since that time.

¶3      On October 8, 2020, the circuit court entered an order authorizing the involuntary administration of psychotropic medication to Hardy, pursuant to WIS. STAT. § 51.61(1)(g)3.  On September 27, 2021, DHS filed a petition to extend the involuntary medication order.  The petition included multiple supporting documents, including a report from Hardy's treating psychiatrist.

¶4      Hardy's psychiatrist, Dr. Jeffrey A. Drexler, testified at a hearing on the petition.  Dr. Drexler testified that he had been treating Hardy since October 2020, that Hardy was schizophrenic, and that Hardy's primary symptoms were

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

delusions, paranoia, and auditory hallucinations. Specifically, Dr. Drexler testified that Hardy thinks people are negatively speaking about him and threatening him; his delusions are also hypersexual. Dr. Drexler stated that Hardy's delusions "can" be dangerous "because one of his delusions which he still has is that people come into his room at night…. He stays up at night. He guards the door. He thinks people come in and either have assaulted him or will assault him." Dr. Drexler further testified that the staff at Sand Ridge expressed concern that Hardy "would strike out because he would believe people were coming in to attack him at night, and he still thinks that."

¶5      Dr. Drexler also testified about Hardy's specific medications, telling the circuit court that Hardy has been prescribed Paxil to help control his hypersexual impulsivity, as well as Olanzipine, an antipsychotic and mood stabilizer. Dr. Drexler stated that while the manufacturer of Olanzipine recommends a maximum dose of twenty milligrams, he tripled Hardy's dose because of the pervasiveness of Hardy's symptoms. Dr. Drexler stated that it is common to prescribe a higher than recommended dose of this specific drug, but that Hardy had not previously been on such a high dosage. Dr. Drexler described multiple side effects of the drug and stated that while he informed Hardy about the common side effects, he did not provide Hardy with the "complete list" of side effects, including the potential for increased liver enzymes.

¶6      Dr. Drexler also acknowledged that Hardy has never acted on any hypersexual delusions or hallucinations, nor has he assaulted or threatened to assault anyone since detained at Sand Ridge in 2003. Dr. Drexler also acknowledged that Hardy had not acted violently during his confinement when he was not taking medication. He expressed concern, however, that Hardy could become violent without the medication and that Hardy did not believe that he had

a mental illness warranting medication. Dr. Drexler did not believe that Hardy was competent to decide whether to take his medications and stated that Hardy would not take medication without a court order; however, he acknowledged that there had been periods where Hardy accepted his medications without a court order.

¶7 The circuit court granted the petition to extend Hardy's involuntary medication order, finding that Hardy was schizophrenic, suffered from delusions, could pose a threat to Sand Ridge staff without medication, was not competent to make medication determinations for himself, and that the side effects of the medications had been properly explained to him. This appeal follows.

## DISCUSSION

¶8 Under WIS. STAT. § 51.61(1)(g)3., a patient may be involuntarily medicated if: (1) "the individual is not competent to refuse medication"; or (2) "the medication ... is necessary to prevent serious physical harm to the individual or others." *See id.* The State bears the burden to prove that medication is necessary to prevent serious physical harm to the individual or others by clear and convincing evidence. *See Outagamie Cnty. v. Melanie L.*, 2013 WI 67, ¶37, 349 Wis. 2d 148, 833 N.W.2d 607. This court reviews the circuit court's factual findings for clear error. *See id.*, ¶38. Whether the State met its burden of proof by applying facts to the standard and interpreting the statute are legal issues this court reviews independently. *See id.*, ¶39.

¶9 Pursuant to WIS. STAT. § 51.61(1)(g)4., "an individual is not competent to refuse medication or treatment if, because of mental illness ... and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the individual" one of

the following is true: (1) "[t]he individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives[,]" or (2) "[t]he individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness … in order to make an informed choice as to whether to accept or refuse medication or treatment." *See id.*

¶10 Here, the circuit court's analysis relied on the second factor, finding that Hardy was incapable of making an informed choice with regard to whether to accept his psychotropic medication. The record does not support this determination. Dr. Drexler testified that Hardy accepted psychotropic medications before the circuit court authorized involuntary medication. He also testified that since the order authorizing involuntary medication was issued in October 2020, Hardy voluntarily took all prescribed medication except for one dose. Moreover, the record does not clearly establish that all of the advantages and disadvantages of Hardy's medications were fully presented to him. While Dr. Drexler testified that he generally does not explain the laundry list of side effects medications can cause, focusing instead on the main side effects, Dr. Drexler acknowledged that he did not explain Olanzipine's potential to cause liver impairment. Specifically, Dr. Drexler stated that increased liver enzymes, particularly on Hardy's tripled dose, were a possibility for Hardy. The record establishes that when on a lower dose, Hardy accepted his medications willingly. That Hardy expressed reluctance to take a triple dose does not demonstrate incompetence. Accordingly, the State did not meet its burden to show that Hardy was substantially incapable of applying the advantages and disadvantages of accepting medication.

¶11 We also conclude that the State did not meet its burden to show that that medication is necessary to prevent serious physical harm to Hardy or others.

Dr. Drexler's primary concern was that Hardy *could* "strike out" and that Sand Ridge staff have expressed concerns regarding the same; however, Dr. Drexler testified that Hardy has had no history of violence or threats of violence during his eighteen years of confinement. While Hardy has delusions and has expressed that he feels threatened, Dr. Drexler acknowledged that Hardy has not actually acted on those delusions. In short, the State did not establish the severity of any risk that Hardy allegedly posed either to himself or others.

¶12     For the foregoing reasons, we conclude that the State did not meet its burden to show either that Hardy was incompetent to refuse his medication or that the medication was necessary to prevent serious physical harm to Hardy or others. Accordingly, we reverse the circuit court order mandating involuntary medication and remand this matter with directions to deny the State's motion for involuntary medication.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.